THOMAS A. STRATTON V. FLORENCE E. DOLE.

FILED JUNE 19, 1895. No. 6100.

1. **Continuance.** An application for continuance is addressed to the discretion of the trial court, and the ruling thereon will not be disturbed in the absence of a clear abuse of discretion.

2. ———: DEPOSITIONS IN OTHER STATE. Provisions for the taking of testimony in one state for use in the courts of another, and the enforced attendance of witnesses for that purpose, are founded upon comity, and are, in the absence of express statutory provision to the contrary, extrajudicial as to the courts of the state where such evidence is sought.

Stratton v. Dole.

3. ———: ———. A continuance will not be granted to enable a party by proceedings for contempt in the courts of Wisconsin to compel a contumacious witness to testify by deposition, there being no presumption that by refusing to answer he is guilty of contempt of any court of that state.

4. **Breach of Promise to Marry**: DAMAGES: EVIDENCE OF DEFENDANT'S WEALTH. In actions for breach of promise to marry, evidence of the defendant's reputation for wealth is admissible, not for the purpose of proving his ability to pay damages, but as tending to show the condition in life which the plaintiff would have secured by a consummation of the marriage contract, although it is not permissible for the plaintiff to particularize the defendant's property.

5. ———: ———: ———. The defendant's mother, at his request, procured the plaintiff to receive him as a suitor, and was otherwise actively engaged in promoting the marriage agreement. *Held*, That communications by the former to the plaintiff, while thus engaged, touching the defendant's property, made as an inducement to the marriage contract, are admissible in evidence in an action against the latter for the breach thereof.

6. **Review**: HARMLESS ERROR. Error not probably conducing to a wrong final decision is no ground for the reversal of a judgment.

7. **Damages for Breach of Promise to Marry**: EVIDENCE OF PLAINTIFF'S CHARACTER. *Held*, Permissible for the defendant to prove specific acts of incontinence on the part of the plaintiff. If guilty of fornication, that fact would be a defense to her action, since personal purity is one of the implied conditions of her agreement. If her actions have been wantonly indelicate and inconsistent with the conduct of a pure-minded woman, that fact is admissible at least in mitigation of damage.

8. **Review**: HARMLESS ERROR IN INSTRUCTION. A judgment will not be reversed for the giving of an erroneous instruction where the verdict is clearly right and the only one which could have been rendered upon the particular issues involved.

9. **Witnesses**: IMPEACHMENT. Evidence set out in the opinion, *held*, admissible for the purpose of impeachment, the necessary foundation therefor having been laid.

10. **Trial**: READING DECISIONS TO JURY. Although the practice of reading to the jury from reported decisions should not be encouraged, the subject is one within the discretion of the trial court and presents no grounds for interference by this court in the absence of an abuse of discretion.

11. **Arguments of Counsel.** Arguments of counsel based upon facts not in evidence will not justify the reversal of a judgment when the objectionable remarks were evidently made in reply to the argument of the complaining party who was guilty of the first offense in that regard.

12. **Breach of Promise to Marry: JUDGMENT FOR PLAINTIFF: SUFFICIENCY OF EVIDENCE.** Evidence examined, and *held* sufficient to sustain the verdict and judgment of the district court.

ERROR from the district court of Lancaster county. Tried below before TUTTLE, J.

*E. E. Brown* and *G. M. Lambertson*, for plaintiff in error.

*W. R. Starr, J. B. Strode*, and *R. D. Stearns, contra.*

POST, J.

This was an action by the defendant in error, in the district court for Lancaster county, for the breach by the plaintiff in error (defendant below) of an alleged promise of marriage. It is also alleged as a part of the cause of action in the court below that the defendant therein, under promise of marriage, seduced and debauched the plaintiff, to her damage, etc. The answer, while denying the alleged seduction, admits a promise of marriage conditioned that the plaintiff should prove upon inquiry to be a woman of good character and reputation. It is further alleged that the defendant, subsequent to said promise, ascertained that the plaintiff was not a woman of good character and reputation, but that she was, on the contrary, immoral and unchaste, by reason of which he declined to consummate the agreement above mentioned. There was a trial in the district court, resulting in a verdict and judgment for the plaintiff therein, from which the defendant prosecutes proceedings by petition in error to this court.

The first of the errors assigned is the denial of a continuance on the motion of the defendant in order to enable him

to secure the testimony of one Rowley, an alleged material witness.   By reference to the defendant's affidavits we observe that he claims to have learned from the plaintiff's own confession on the 31st day of December, 1890, while the agreement was still in force, that she had been criminally intimate with certain persons, including the witness named, and which is the ground upon which he relies for a justification of his refusal.   The action, as shown by the record, was commenced in the district court April 27, 1891, and a trial had therein in the month of April, 1892, resulting in a verdict, which was, on the defendant's motion, set aside and a new trial ordered.   The motion for continuance above mentioned was made at the September, 1892, term, to-wit, September 20, and the order overruling it bears date of December 9, being the sixty-eighth day of the said term.   On the 23d day of August of that year the deposition of said Rowley was taken before a notary public in the city of Racine, in the state of Wisconsin. During said examination the witness was asked whether there had at any time existed criminal relations between himself and the plaintiff, which question he refused to answer, assigning therefor that his relations with the plaintiff were his "own personal business."   It was urged in the district court, and which contention is here renewed, that if sufficient time had been allowed for that purpose the defendant could, by means of proceedings for contempt in the courts of Wisconsin, have compelled the witness to answer and that his answers would have established the defense alleged.   That an application for continuance is addressed to the discretion of the trial court, and that the ruling thereon will not be disturbed unless such discretion is shown to have been abused, are propositions so firmly established by the decisions of this court as to render a reference to them wholly unnecessary.   Rowley, it should be noted, resided in this state continuously from the date of the alleged confession of the plaintiff in December, 1890, until the month

of September, 1891, yet no attempt was made to secure his testimony until the month of August, 1892; nor had any steps been taken at the time of the overruling of the motion to compel him to answer the questions propounded. The district court evidently regarded the showing of diligence as insufficient to entitle the defendant to a further continuance, and such conclusion cannot be regarded as an abuse of discretion calling for interference by this court. But the district court was apparently influenced by another consideration, and which is of itself a sufficient justification of the ruling assigned, viz., the improbability of securing the evidence sought by resort to proceedings for contempt in the courts of Wisconsin. The law which authorizes the taking of testimony in one state for use in the courts of another state, and which requires the attendance of witnesses for that purpose, is founded upon comity, and is, as remarked by Lyon, J., in *State v. Lonsdale*, 48 Wis., 365, extrajudicial as to the courts of the state where such evidence is sought. It follows that the witness named, by refusing to answer in this cause, is, in the absence of a special statute of Wisconsin, guilty of no contempt of any court of that state. This conclusion is in harmony with the recognized rule as well as the decisions of this court. (See *Johnson v. Bouton*, 35 Neb., 898, and cases cited.)

The plaintiff was permitted, while a witness in her own behalf, to repeat an alleged statement of the defendant's mother relating to his, defendant's, financial standing, and which is assigned as error. In actions of this character evidence of the defendant's general reputation for wealth is admissible, not for the purpose of proving his ability to pay damages, but as tending to show the condition in life which the plaintiff would have secured by a consummation of the marriage contract. (*Kerfoot v. Marsden*, 2 Fos. & Fin. [Eng.], 160; *Kniffen v. McConnell*, 30 N. Y., 285; *Holloway v. Griffith*, 32 Ia., 409; *Bennett v. Beam*, 42 Mich., 346; *Olson v. Solveson*, 71 Wis., 667; *Johnson v.*

*Travis,* 33 Minn., 231 ; *Hunter v. Hatfield,* 68 Ind., 422.)
But it is not as a rule permissible to particularize the
defendant's property. As said in *Kerfoot v. Marsden,
supra: "* You may ask in a general way as to the defendant's
property, but you cannot go into particular items as to his
property." (See, also, *Kniffen v. McConnell, supra ; Chellis
v. Chapman,* 125 N. Y., 214.) Our first impression was
that the admissions of the declarations mentioned was error
requiring a reversal of the judgment; but a second read-
ing of the record has convinced us that this is not a case
for the application of the general rule, in view of Mrs.
Stratton's relation to her son, the defendant, and the con-
spicuous part taken by her in promoting the marriage con-
tract. The evidence bearing upon this aspect of the case
is free from conflict and may be summarized as follows:
About the 14th day of October, 1890, the plaintiff then
residing with her parents in Red Willow county and
engaged in teaching school in an adjoining district, re-
ceived a letter from Mrs. Stratton inquiring if she was
married or engaged, and soliciting an answer, saying
that she, plaintiff, might hear something to her advan-
tage. This communication was followed by a second and
third within the period of a month. In the second, the
writer mentioned the fact that her son, the defendant, had
recently broken an engagement with a young woman in
Iowa to whom he had been engaged, and that she, Mrs. S.,
would like to have him call on the plaintiff during a visit
he was then contemplating to that part of the state. The
third letter was to advise plaintiff of the date set for the
defendant's visit. In one of the letters mentioned the
writer referred to her friendship for the plaintiff resulting
from a previous acquaintance, saying that her son thought
a great deal as she did, and would like a girl whom she
admired. The plaintiff accordingly, on the 14th day of
November following, received the defendant as a suitor at
her home, and which was the beginning of their personal

acquaintance. During that visit of two days the engagement in question was made and the defendant at his request was received by plaintiff's parents as her affianced husband. After returning to his home in Lancaster county, near the city of Lincoln, he addressed the plaintiff a letter under date of November 18, in which he used this language. "Mother was surprised as well as glad when she heard of our engagement. She did not realize how much in earnest I was when I requested her to write to you." On the 29th day of December, following, the plaintiff, at the request of Mrs. Stratton, visited the latter at her home and remained until the evening of January 2. Further reference will be made to that visit in this opinion, but for the present it suffices that there was subsequently no personal communication between the plaintiff and the defendant or his mother. Returning to the examination of the plaintiff as a witness, we observe that after testifying to the engagement she was interrogated as follows:

Q. Did you learn anything of his financial condition prior to his coming to your house?

A. Yes, sir.

Q. Through whom?

A. Through his mother, his brother-in-law, and sister.

Q. What, if anything, did you learn through his mother as to his financial condition?

Objected to, as incompetent and hearsay. Overruled. Exception.

A. I learned that he had property in the city of Lincoln and that he also had 160 acres of land lying northeast of the city. She said they owned a half-section all together, that is, Mr. Stratton senior and Mr. T. A. Stratton, but that T. A. Stratton's property was worth more than the others, and she estimated the property at about $300,000, as near as I can remember.

The plaintiff had just been examined regarding the contents of Mrs. Stratton's letters, and the utmost that can be

claimed by defendant for the evidence quoted is that we are left in doubt whether it refers to the written correspondence or to information previously communicated to the witness, a doubt which is not removed by the other evidence in the record. Prior to December 29, 1890, the plaintiff had met Mrs. Stratton on one occasion only, viz., during a four weeks' visit at the home of a common relative in Hitchcock county. It is not shown that the amount of the defendant's property or that of his mother was referred to during that visit, nor are we at liberty to presume that Mrs. Stratton at that time confided to a comparative stranger, in whom she had no interest, the financial standing of herself or her son, rather than on the subsequent occasion when actively encouraging the suit of the latter for the plaintiff's hand. It is a rule of universal application that all presumptions are in favor of the judgments of courts of general jurisdiction and that one seeking a reversal on the ground of alleged error is required to exhibit the record showing affirmatively that the ruling complained of is not merely erroneous, but also probably prejudicial to his rights. The reasonable inference being that the communication touching the defendant's property was by means of the written correspondence conducted at his request and as an inducement to the marriage contract, it was admissible in evidence and the court did not err in receiving it.

Albert Dole, the plaintiff's father, who was a witness in her behalf, referring to a conversation with the defendant, in which the latter solicited the witness' consent to the proposed marriage, testified as follows:

Q. State what he said.

A. I think he told me at that time that they had a half section within two miles of the Lincoln post-office, and half of it was in his name and the other half in his father's or mother's name; that is the best of my recollection now. And I was wanting to know, curiously, what the property was worth so near the city, so I quizzed him something

Stratton v. Dole.

about it and solicited the information from him that it was worth a good deal of money, but it was all in lots, or about all in lots.

. Q. Did you make any estimate from his representations as to what property he had?

Objection to the witness giving any estimate he made overruled and defendant excepts.

A. As near as I can remember he estimated to me so that I figured out his land, what he had left, was worth about $500 per acre from the lots he had sold. He told me he had sold a few lots off the piece. I don't remember how many.

Q. Off what piece?

A. Off his quarter section, and in platting it it was worth about $500 per acre; something like that.

It is contended that the overruling of the foregoing objection was prejudicial error. Counsel do not attempt a defense of the above ruling in this court, and we assume that it cannot be successfully defended. But is the error prejudicial, calling for a reversal of the judgment? It will be observed that although the question embraces all of the defendant's property, the answer is confined to a particular tract of land; and while the first sentence thereof might warrant the inference that the value mentioned was merely the estimate of the witness, the answer as a whole, in connection with the succeeding one, points unmistakably to the defendant's own estimate rather than that of the witness. We are, after repeated examinations of this part of the record, unable to determine that the ruling under consideration was prejudicial to the defendant. It is not sufficient, as elsewhere stated, that an erroneous ruling may possibly be prejudicial, and that errors not probably conducing to a wrong final decision will be disregarded by the appellate court. (*Vide* Elliott, Appellate Procedure, 539, 632.) True, the jury might have construed the language quoted as referring to the estimate of the witness only, but

Stratton v. Dole.

such a construction is neither the natural or probable one and will not therefore be presumed by this court.

It was sought by John Paul and other witnesses to impeach the plaintiff's character by proving that she was reputed to be unchaste in the neighborhood of her home, and the following question was excluded on her objection during the examination in chief of the witness named: "Is there anything you know of your own personal knowledge, other than what you have told, relative to her improper conduct?" It was certainly permissible for the defendant to show specific acts of incontinence on the part of plaintiff, whether committed before or subsequent to the marriage contract. If she had been guilty of fornication, that fact would have been a complete defense, since personal purity was one of the implied conditions of her agreement. If she had been guilty of acts wantonly indelicate and inconsistent with the conduct of a pure-minded woman, that fact was admissible at least in mitigation of damage. (*Willard v. Stone*, 7 Cow. [N. Y.], 21; *Palmer v. Andrews*, 7 Wend. [N. Y.], 142; *Williams v. Hollingsworth*, 6 Baxt. [Tenn.], 12; *Cole v. Holliday*, 4 Mo. App., 94.) But we cannot say that the ruling on that question, although erroneous, is prejudicial to the defendant, for the reason that no offer was made from which the court could determine that the evidence was material to the issues of the case. It has been frequently held that such an offer is necessary as a basis for review by petition in error. (*Masters v. Marsh*, 19 Neb., 458; *Hamilton v. Ross*, 23 Neb., 630.)

Exception was taken to the giving of one paragraph of the charge of the court as follows: "With respect to the absolute contract to marry, damages for its breach, and the aggravation thereof by the alleged seduction, you are instructed that the burden of proof is upon the plaintiff to maintain the same by a preponderance of evidence. And with respect to the alleged conditional promise to marry

35

upon ascertaining the good reputation and character of the plaintiff, the burden is upon the defendant to maintain the same by a like preponderance of evidence." It is said by counsel for defendant that "the burden was upon the plaintiff to establish an unconditional promise, or if there was a condition, that it had been complied with on her part. So plain and just a proposition needs no authority to maintain it." But the question of the soundness of the proposition stated in the instruction we regard as wholly immaterial, since the allegation of an unconditional promise is conclusively established by the proofs. Indeed, were that the only issue in the case, the court might with propriety have directed a verdict for the plaintiff. The evidence upon which this conclusion rests is the numerous letters of the defendant, beginning with that of November 18 above referred to. To set out that correspondence at length would be without profit to the parties hereto or the profession. It is sufficient to say that they abound in expressions of the tenderest regard for the plaintiff and solicitude for health which was somewhat impaired by recent illness. On November 29, referring to certain presents that day sent her, he wrote: "The photo and album are a birthday present, but the ring I hope you will accept as having more significance." And on December 13, referring to her acknowledgment of the letter above mentioned, he wrote, "How glad I was to hear that you had received the little presents all right, and a thousand thanks for accepting the ring in the way you did." Again, on December 18 he wrote in reply to an inquiry by the plaintiff, "In reference to the dress you expect to wear on the day I look forward to that will make me the happiest man on earth, I am satisfied to leave that to your own good judgment." It would be discrediting the defendant's intelligence to permit him to say, in the face of these and many like expressions, that, by the terms of his contract with the plaintiff, he then had under consideration the question of her chastity.

The foregoing observations lead naturally to a consideration of the visit of the plaintiff to defendant's home on the invitation of his mother. Her reception by the latter as well as by the defendant was of the most cordial kind and she appears to have been at once accorded the position of prospective wife and daughter, although the relations of the parties named at the termination of her visit, four days later, is a subject upon which the evidence is irreconcilably conflicting. A statement of the contentions of the parties with respect to this branch of the case is deemed sufficient without even a summary of the evidence. The defendant, as we have seen, contends that on New Year's the plaintiff confessed to him her past criminal relations with the witness Rowley and others, and which fact he confided next day to his mother, to whom, it is claimed, a like confession was made. The alleged confession is, as may be inferred, denied by the plaintiff, who testifies that the defendant, after she had retired on the night in question, entered her room when, as she claims, her seduction was accomplished. There is about the story of each that which suggests the propriety, if not the necessity, of corroboration. But the issue thus presented was by the jury determined in favor of the plaintiff, and the verdict, like other findings based upon conflicting evidence, is conclusive. We find, however, in the subsequent correspondence of the parties much which tends directly to corroborate the plaintiff and to contradict the defendant. For instance, on January 3, the day after her departure from Lincoln, the plaintiff addressing defendant from Indianola, wrote:

"DEAREST AL.: I arrived here safely and feel very well under the circumstances. * * * Darling, there is a place in my heart no one but you can fill, and I realize the fact more and more all the time. However, I am going to be brave and cheerful, and wait until the time comes when we shall not be separated. I cannot help but worry about your mother. I fear there is more the matter with her than

she is willing to admit. I don't imagine this letter will seem very cheerful to you, but I do feel so worried about her that I can't help expressing it. * * * Write immediately so that I may know. I have had so much attention from you for the past week that I miss it now. * * * Give my love to your mother."

The foregoing was followed by letters on the 11th and 19th of the same month, in each of which reference is made to their mutual affection and contemplated marriage. From the last we quote the following: "I have all the confidence in you imaginable, for I know you would not have confided in me as you did if you had not thought me worthy of your undivided love, and you may be sure no gentleman will be of much importance this winter. I do not intend to go with them any more than if we were married, for I think it just as wrong as it will be later." The defendant, replying to the letter of January 2, addressed the plaintiff "Dear Eva," and, after some suggestion of medical treatment for her, adds, "I am sure your father and mother will concur with me, and I assure you my motives are the best, for I would write this if I never expected you to become my wife." Again, on the 15th, after addressing her as "My Darling Girl," he wrote: "How I would enjoy that talk, for I am just as lonely without you as a man can be. * * * Why could we not write our love talks on separate slips of paper and write only sober business talk in our letters proper?" These communications afford unmistakable evidence of the relations of the parties on and prior to the date last above mentioned, and are, to say the least, radically inconsistent with the claim that the defendant had before that time learned from the plaintiff's confession of her illicit relations with other men, including his own sister's husband.

Mrs. Stratton, defendant's mother, who was a witness in his behalf, testified on her examination in chief that while driving from her home to Lincoln in company with the

plaintiff on the morning of January 2 the latter repeated the confession alleged to have been made to the defendant, which included criminal relations with the said Rowley and the witness' son-in-law, Harvey Gunder, only.  On cross-examination she was, in substance, asked if she had not on a day named stated to Mr. Starr in front of Opelt's hotel in the city of Lincoln that the alleged confession was made at her home in the presence of her son, and if she did not in said conversation further state to Mr. Starr that the plaintiff during said confession admitted having led an immoral life ever since she was old enough, and that she had been criminally intimate with men generally, including a man then residing in Lincoln.   The witness having answered in the negative the plaintiff was permitted to call Mr. Starr for the purpose of impeachment, and who, over the defendant's objection, testified that she had, in a conversation at the time and place named in the foundation question, used the language therein imputed to her.   Although the ruling of the court in the admission of that evidence is vigorously assailed by counsel for the defendant, we are unable to say that it is error.   It is true that a witness who has been cross-examined on matters collateral to the issues cannot, as to such examination, be afterwards contradicted by other witnesses.   But the alleged confession was not a collateral issue of the case.   If the witness had previously made statements concerning the admissions of the plaintiff so radically different from her version thereof at the trial, that fact was admissible as bearing upon the question of her credibility.   To the trial court is committed some discretion in prescribing the limits at the cross-examination, whether for the purpose of impeachment or otherwise, and in the absence of a clear abuse of that discretion its rulings will not be reviewed by this court.

Finally, it is argued that the district court should have set aside the verdict on account of the misconduct of the plaintiff's attorney "in reading to the jury and commenting

upon a decision of the supreme court of Massachusetts."
From the evidence in the bill of exceptions it appears that
defendant's attorney in his argument to the jury stated, in
substance, that the case on trial was the first of its kind
ever brought in Lancaster county, that not a dozen cases
of the kind had ever been tried in the state of Nebraska,
and but one or two of such cases had ever reached the su-
preme court. The reason he said that so few cases of the
kind were brought is that a woman of fine sensibilities
would not sue for damages for the breach of a contract to
marry, that such causes are not meritorious and should not
be looked upon with approval. Afterward plaintiff's at-
torney during the closing argument was proceeding to read
from notes when interrupted with the objection that the
paper from which he was reading was "a copy of a legal
decision," which objection was overruled and an exception
taken by the defendant. The decision in question is *Wight-
man v. Coates*, 15 Mass., 1, and so much thereof as read to
the jury is a defense of the action for breach of promise to
marry, and appears to have been intended as an answer to
the argument of defendant's attorney. The practice in this
case is certainly not to be commended, but, like other mat-
ters pertaining to the trial, it is within the discretion of the
court and will not be made the ground of reversal in the
absence of probable prejudice to the complaining party.
The objection, it will be observed, does not include the mat-
ter of the opinion, but goes no further than the question of
practice, and therefore presents no question for review by
this court. Another answer to this conclusion is that de-
fendant's attorney was the first to offend and will not be
heard to complain of remarks outside of the record in re-
ply to his argument. (*Miner v. Lorman*, 66 Mich., 530.)
The judgment of the district court will accordingly be

AFFIRMED.