Argued January 21, affirmed February 2, 1915.

# GERLINGER *v.* FRANK.*

### (145 Pac. 1069.)

#### Witnesses—Conduct of Judge—Punishing Witness During Trial.

1. The court may, during the trial, punish a witness who refuses to testify, stating that he does not remember, when it is obvious that his lack of memory is a mere pretense.

#### Appeal and Error—Questions Reviewable—Exceptions—Abstract of Record.

2. An exception omitted from the abstract of record will not be discussed.

#### Witnesses—Privileged Communications—Waiver.

3. Under Section 734, L. O. L., providing that, where a party offers himself as a witness, he thereby consents to the examination of his attorney on the same subject, a party who testifies as a witness in his own behalf as to a particular subject thereby removes the ban of privilege of his attorney from testifying on the same subject.

> [As to privileged communications between attorney and client, see note in Ann. Cas. 1913A, 3.]

#### Appeal and Error—Discretion of Trial Court—Reception of Evidence.

4. Under Section 862, L. O. L., providing that, after the examination of a witness is concluded, the witness shall not be recalled without leave of court, and that leave may be granted or withheld in the exercise of discretion, the action of the court in permitting defendant, while introducing his case, to recall plaintiff for further cross-examination, will not be disturbed, unless the court abused its discretion.

#### Witnesses—Cross-examination—Character of Witness.

5. A party may, subject to the discretion of the court, cross-examine plaintiff to show her character and standing to affect her credibility.

#### Breach of Marriage Promise—Actions—Evidence—Admissibility.

6. A defendant in an action for breach of marriage promise may, under the general issue, show the bad character of plaintiff for chastity, as bearing on the damages, though the bad character of the woman, if known, is not a defense to her action for a breach of marriage promise.

> [As to admissibility of evidence of character or reputation of plaintiff in action for breach of promise to marry, see note in Ann. Cas. 1912D, 963.]

---

*As to the evidence of character for chastity in action for breach of promise, see note in 14 L. R. A. (N. S.) 748.

For the measure of damages for breach of promise to marry, see note in 41 L. R. A. (N. S.) 840.          REPORTER.

Breach of Marriage Promise—Damages—Amount Awarded—Discretion of Jury.

7. The amount of damages for breach of marriage promise is within the sound discretion of the jury within the limits of the testimony, and an award of nominal damages will not be disturbed merely on the ground that defendant was a rich man.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is an action by Gertrude Gerlinger against Lloyd Frank.

In substance, the plaintiff alleges that during the month of January, 1913, the plaintiff and the defendant mutually promised to marry each other; that afterward, about the month of March, the defendant absolutely refused to carry out the contract or to marry the plaintiff, and that by reason of the breach by defendant of such contract the plaintiff has been greatly humiliated, has suffered great mental pain and anguish, and her affections have been deeply injured to her damage in the sum of $50,000. She says also, in substance, that the defendant is wealthy, and had he carried out the agreement to marry the plaintiff, her station in life would have been greatly improved, and she would have profited largely by such marriage. The answer merely traversed the allegations of the complaint. A jury trial resulted in a verdict and judgment in favor of the plaintiff for $1. She appeals.                                    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Moulton & Hamaker,* with an oral argument by *Mr. Arthur I. Moulton.*

For respondent there was a brief over the names of *Messrs. Joseph & Haney* and *Mr. Charles H. Carey,* with oral arguments by *Mr. Carey* and *Mr. Bert E. Haney.*

MR. JUSTICE BURNETT delivered the opinion of the court.

At the trial the plaintiff herself was a witness, and gave testimony in support of her cause of action as narrated in her complaint. The defendant cross-examined her regarding her life and some of her transactions in Alabama about the year 1905 in matters affecting her chastity and purity at that time, including a suit instituted by her against a man for her seduction. Her counsel objected to this, on the ground that it was not proper cross-examination, irrelevant and immaterial, and proper only as a matter of defense. A second exception is founded upon the fact that after the plaintiff had rested her case, and part of the testimony for the defendant had been put in, the court allowed the defendant to recall the plaintiff for further cross-examination. The record discloses that at the close of her examination by the defendant, while she was on the stand in support of her case, counsel for defendant reserved the right to further cross-examine her. On this renewed interrogation by the defense she was questioned at length regarding sundry meretricious relations she sustained with different men both before and after the commencement of this action, all over the objection of the plaintiff that it was not proper cross-examination, irrelevant, incompetent and immaterial.

1. In passing, we note exception No. 4, as it appears in the abstract of record, to the effect that, while a cer-

tain witness was on the stand on behalf of the defendant, the court committed him to jail because with apparent contumacy he refused to testify concerning occurrences which happened between him and the plaintiff only a few days before, by persistently and continuously saying that he did not recollect. No exception to this action of the court appears either in the abstract of record or bill of exceptions. Besides this, the court had undoubted authority to punish the witness promptly for refusing to testify when it was apparent that his forgetfulness was purely sham. The court was not required to wait until the conclusion of the trial before calling the offending witness to account.

2, 3. The fifth exception noted in the abstract is founded upon the action of the court in allowing a detective to testify to the conduct of the plaintiff in her home, since the commencement of the action, with the witness who was punished for contempt. Exception No. 6 relates to the evidence of one Alfred Eubank, who was allowed to testify as to his relations and acquaintance with the plaintiff some ten years before the filing of the complaint, and likewise to state that her general reputation for truth was bad. Similar objections under exceptions Nos. 8, 9 and 11 were taken to the testimony of witnesses concerning her reputation, all to the effect that the matter sought to be elicited was too remote. Exception No. 7 is omitted from the abstract of record and on that account is not discussed. Exception No. 10 relates to the deposition of J. H. Ward, an attorney, who was allowed to narrate the effort of the plaintiff to induce him to commence an action in Alabama on her behalf against one Eubank for her seduction, and to state that he declined to take her case. The objection to this testimony was

on the ground that it called for privileged communications made by the plaintiff to her attorney, and because it was too remote. So far as the privileged communications are concerned, the objection may be dismissed with the observation that the plaintiff herself was a witness, and was interrogated about the very subject mentioned and testified about it. This fact removes the ban of privilege, for it is said in Section 734, L. O. L.:

"If a party to the action, suit, or proceeding offer himself as a witness, that is to be deemed a consent to the examination also of a wife, husband, attorney, clergyman, physician, or surgeon on the same subject. * * *"

4. The controlling questions to be determined are two: (1) Whether the court erred in allowing the plaintiff to be recalled for cross-examination; and (2) whether it was permissible to show either by cross-examination or by other testimony under the general issue that the plaintiff had sustained illicit relations with other men as long ago as ten years before the trial, or since the action was commenced. As to the right to recall a witness for further cross-examination it is stated in Section 862, L. O. L.:

"A witness once examined shall not be re-examined as to the same matter without leave of the court; but he may be re-examined as to any new matter upon which he has been examined by the adverse party. After the examinations on both sides are concluded, the witness shall not be recalled without leave of the court. Leave is granted or withheld in the exercise of a sound discretion."

It is not apparent that the court abused its discretion in allowing the witness to be recalled, especially since counsel for the defendant gave notice at the time

of his reservation of the right to recall her. As to the range of examination it is clearly within the sound discretion of the court. In an exhaustive opinion in *State* v. *Bacon,* 13 Or. 143 (9 Pac. 393, 57 Am. Rep. 8), Mr. Justice LORD laid down the rule to this effect:

"Subject to the sound discretion of the court, a witness may be compelled to answer any question which tends to test his credibility, or to shake his credit by injuring his character, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself; except only that he may claim his privilege and refuse to answer a question which tends to expose him to a criminal charge."

See, also, *Redsecker* v. *Wade,* 69 Or. 153 (138 Pac. 485).

5. Considered as a witness only, subject to the discretion of the court, the jury had a right to know the character and standing of the person testifying. A most corrupt and unworthy person may make a fair appearance in direct examination upon a witness stand, and it would be a harsh rule that would exclude the opposing party from revealing by cross-examination the actual value of the declarations of such a witness.

6. Besides all this, the plaintiff was claiming damages on account of being greatly humiliated, suffering great mental pain and anguish, and having her affections deeply injured. It is a matter of common sense that a pure-minded, virtuous woman will suffer greater damage over the disappointment of her affections than a common bawd would experience in the refusal of her paramour to marry her. The testimony was applicable to the general issue on this subject. The plaintiff claimed $50,000 damages. This averment was directly traversed, and the question was:

What was the amount to be adjudged as recompense for the injury alleged? Any testimony, therefore, throwing light upon the person supposed to be damaged was pertinent to this general issue. That cannot be injured which is already corrupt; that cannot be spoiled which has been destroyed; and that cannot be damaged which is already dilapidated beyond repair. The antithesis between a pure, good and virtuous woman and a blasé demirep is as marked as the difference between the songs of the ransomed and the wail of the damned. Hence, in order to enable the jury to translate in sordid dollars and cents the damage to be allowed in a case like the present, a very wide range should be given to the examination under the general issue as to the actual personage claiming damage. How the plaintiff should be classified in the wide range between the extremes of virtue and vice was a question exclusively for the jury when enlightened by testimony affecting her character favorably or unfavorably.

It may be well said, based upon the citations presented by the plaintiff, that if a man, knowing the character of the woman to whom he proposes marriage, violates the contract, her unchastity will furnish no defense, because under the circumstance of his knowledge of her shortcomings he cannot plead it as a bar to the action. The precedents cited would be applicable if an attempt had been made by affirmative matter to interpose a plea in bar to the plaintiff's cause of action. That is not the question here. The issue involved on that point is the amount of damages required to recompense the injury which the plaintiff has received, and on the general issue it is admissible to show whether the plaintiff is a person who would likely

have experienced such an injury as would justify more than nominal damages.

7. Complaint was made at the argument that, considering the wealth of the defendant, more than nominal damages should have been awarded, on the ground that a marriage with a man as rich as he would have been of greater pecuniary advantage to the plaintiff. In the wide range of estimation allowed to a jury within similar limits of testimony, the amount of damage is one of sound discretion with the jurors. They may have considered that a marriage with such a man as the plaintiff describes the defendant to be would have been a veritable hell, instead of an advantage to the plaintiff, even under the circumstances mentioned, and that she lost but little by being rid of such an untoward alliance. The following citations are applicable to the point in issue: *Van Storch* v. *Griffin,* 71 Pa. 240; *Stratton* v. *Dole,* 45 Neb. 472 (63 N. W. 875); *Burnett* v. *Simpkins,* 24 Ill. 264; *Tompkins* v. *Wadley,* 3 Thomp. & C. (N. Y.) 424; *Denslow* v. *Van Horn,* 16 Iowa, 476; *Willard* v. *Stone,* 7 Cow. (N. Y.) 22 (17 Am. Dec. 496); *Johnson* v. *Caulkins,* 1 Johns. Cas. (N. Y.) 116, 1 Am. Dec. 102.

Finding no error, the judgment is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.