ETTA V. HIGGINS, APPELLEE, V. IRA R. DOTY, APPELLANT.

FILED JANUARY 13, 1922.   No. 21691.

1. **Appeal:** DIRECTION OF VERDICT. Where the evidence on the trial in the district court is not conflicting, and reasonable minds cannot differ as to the conclusion to be derived therefrom, a verdict directed by the court in accordance with such conclusion will not be disturbed on appeal.

2. **Marriage Contract:** BREACH: EVIDENCE. In an action for damages for breach of promise to marry, it was proper for the trial

court to receive in evidence testimony of the plaintiff giving conversations during the courtship, in which defendant told her what he was worth financially and of what his property consisted.

3. ——: ——: INSTRUCTION. In such a case, where plaintiff was the only witness and the above was the only proof on the subject, it was not error for the court to instruct the jury that an element for them to consider, in measuring the damages, was the value of the defendant's property and his financial standing.

APPEAL from the district court for Adams county: HARRY S. DUNGAN, JUDGE. *Affirmed on condition.*

*Stiner & Boslaugh, W. G. Hastings* and *W. M. Whelan,* for appellant.

*J. E. Willits, contra.*

Heard before LETTON, DAY and DEAN, JJ., CORCORAN and GOSS, District Judges.

GOSS, District Judge.

Plaintiff sued defendant for damages for breach of his alleged promise to marry her. The jury returned a verdict for plaintiff, judgment was rendered thereon, and defendant appeals.

Plaintiff was the only witness. She introduced thirteen letters received from the defendant, testified in her own behalf, was cross-examined, and rested. Defendant offered no evidence. The court, on his own initiative, gave the jury two instructions: First, to return a verdict for the plaintiff; and, second, defining the measure of damages. The defendant tendered three instructions on his theory of the case and they were refused.

Appellant argues strenuously that the court erred in deciding as a matter of law that the evidence conclusively showed a contract of marriage between the parties. He insists that the evidence does not show mutual promises, and particularly does not show that she agreed to marry him.

The letters from appellant to appellee were written by

him at Hastings, his home, to her at Beatrice, where she was temporarily, between August 2, 1915, and June 4, 1916. He was a bachelor, an auctioneer, trader, owner of farm lands and of rental property in the city of Hastings. She had been unmarried for about eight years, following a divorce obtained from her husband. The parties had been acquainted for years. At one time she had rented a house from him and he had boarded with her and her family therein. She says there had been oral talk of marriage between them, and she was pleased when she received a letter, dated August 15, 1915, from him, in which, following some observations about members of his family, he wrote: "I expect they will all go up in smoke when you and I are married. But they will have to go. I only wish I had of built last summer and now I would of had a home." His letters are replete with suggestions of repairing a house to live in and of building a new one, and the like. They contain expressions such as: "And it is going to be hard to get a place while we build." "My, how I wish we had the house finished and we were settled in it." "Erma (his niece) is planning on staying with us for a while at least. * * * The north flat is vacant. Believe I will rent it and put her things in it and then we will be handy to build." "It is you I want to be careful, for I am going to need you so bad by and by and you cannot tell how soon." "We may have to take Erma to live with us. I told her I was going to marry you. Lovingly, Ira."

These sufficiently express the marital intention of appellant and she testified that there were oral expressions by him of like character. But it is argued that the promises were not mutual, in that she failed to show any promise on her part. Appellant seems to overlook the question on cross-examination and her answer, when she said that her letters to him (none of which were put in evidence) indicated that she wanted to marry him. Moreover, the oral evidence shows that he went to visit

Higgins v. Doty.

her several times in Beatrice, and they discussed this marriage, the building of their future home on his Fifth street lot in Hastings, and he set the first of the year as the date for their marriage.

We conclude from all the evidence that there were mutual promises of marriage, and that both parties were bound thereby. Different minds could not honestly draw different conclusions from the undisputed facts. No jury of reasonable men could have found differently. The court did not err when he directed a verdict for plaintiff. *Burke v. First Nat. Bank,* 61 Neb. 20; *Cannell v. Roush,* 89 Neb. 289; *Thomas v. Otis Elevator Co.,* 103 Neb. 401.

Appellant says the court erred in his second instruction to the jury, in which he instructed the jury that, in taking into consideration the loss of a home and the comforts which ordinarily would result to the plaintiff, they might consider the value of the defendant's property and his financial standing. He asserts that there is no competent evidence in the case as to his actual wealth or as to his reputed financial standing. The plaintiff testified that the defendant told her during the engagement that he was well fixed, was making money right along, and that he was worth $70,000 or $75,000. But appellant argues that it was error, under the rule announced in *Stratton v. Dole,* 45 Neb. 472, to permit her to testify to statements made by appellant to her as to his property or as to his actual wealth. We find, however, that in *Stratton v. Dole* the plaintiff was permitted to relate what the mother of the defendant told her, touching the defendant's property and its value. Ordinarily hearsay, this evidence was admitted on the theory that the mother, at the request of the son, having procured the plaintiff to receive him as a suitor and being otherwise actively engaged in promoting the marriage agreement, was his agent. If the agent can bind her principal in such circumstances, it must be true that the principal can bind himself to similar declarations as

to property and as to financial worth in a like case.

The only evidence in this case was that furnished by the plaintiff. She did not undertake on her own initiative to specify defendant's property or to give his reputed financial worth. She merely told what he had said to her as to his property and his financial worth. The context, separated only by a semicolon, properly limited their consideration to the evidence in the case. So we cannot find, under the unique circumstances of this particular case, that the court erred in telling the jury that one element in the evidence for them to consider was the value of defendant's property and his financial standing.

It is urged that the damages are excessive. Such matters are, within reason, for the jury to assess. However, when we consider the meager, indefinite and second-hand character of the evidence as to the financial worth of the defendant and the general circumstances shown in the evidence, we think $7,500, will fully compensate the plaintiff. If plaintiff will file a remittitur of $2,500 in this court within 20 days, the judgment in the lower court will be affirmed for $7,500 as of its date; otherwise, it will stand reversed.

AFFIRMED ON CONDITION.