Argued February 10, affirmed as modified and remanded for further
proceedings in accordance with this opinion March 24, 1977

STARK STREET PROPERTIES, INC.
*Appellant/Cross-Respondent,*
*v.*
TEUFEL et al, *Respondents/Cross-Appellants.*
(No. 416-979, SC 24493)

562 P2d 531

Alan H. Johansen, Portland, argued the cause for appellant. With him on the brief were Stewart M. Whipple and Whipple, Johansen & McClain, Portland.

Larry A. Brisbee, Hillsboro, argued the cause for respondents. With him on the brief were Schwenn, Bradley, Batchelor & Bailey, Hillsboro.

Before Denecke, Chief Justice, and Holman, Lent, and Mengler, Justices.

LENT, J.

**LENT, J.**

This is a declaratory judgment proceeding concerning the construction of a provision in a lease. ORS 28.020. Plaintiff is the successor corporation to the original lessor. The original lessee was Alfred Teufel, and the defendants are his widow and a corporation formed by her after his death to carry on his nursery business.[1]

The lease was for a 10-year term, commencing July 1, 1965, with an option to lessee to renew for another 10-year term.[2] It obligated the lessee to pay $1,000 per month "as rental." The lease provides for the payment of "additional rent" as follows:

> "At the end of five (5) years from the date of this lease, and at the end of every five (5) year term thereafter, if the taxes on the leased property have been increased above the taxes for the years 1965-1966, then in that event such excess shall be paid by the lessee as additional rent, and provided further, if the lessee, with or without the consent of the Lessor, constructs additional buildings on said leased premises, and because of said additional buildings the taxes on said leased property are increased, the Lessee agrees to pay such excess taxes as additional rent."

The parties are in dispute over the meaning of this provision. Plaintiff contends that the lessee was required at the end of each 5-year period to pay as additional rent a sum equal to the amount paid by lessor for taxes over and above what would have been required had the taxes remained at the 1965-1966 level. Defendants contend that the lessee was required to pay only $1,000 per month for the first five years of the lease. They further contend that proper construction of the provision means only that they were to pay

---

[1] Although there does not appear to have been any formal transfer of either lessor's or lessee's rights to these parties respectively, they all agreed that the case was to be tried as if plaintiff was the lessor and defendants were the lessees.

[2] The option was not exercised, and although this case was commenced prior to July 1, 1975, it was not tried until after the leasehold term had expired.

additional rent (over and above the $1,000 per month) during the second five years in an amount equal each year to the difference between the amount of taxes for the 1965-1966 year and the 1969-1970 year.

During the 10-year period of the lease, the taxes for each and every year increased above the taxes for the tax year 1965-1966.[3] Plaintiff paid these taxes and now seeks to recover $18,235.92 as additional rent for the second five-year term. Under defendants' theory, they would owe only $3,179.55.[4]

The lease also provided:

> "It is understood and agreed if the Lessor institutes any suit or action to collect the rent reserved, or to enforce any covenant or agreement hereof, or to obtain any of the remedies herein provided, the Lessee shall pay such sum of money as the court may adjudge reasonable as attorney's fees in such suit or action."

In its complaint plaintiff prayed for an allowance of attorney fees under this provision. Defendants prayed for attorney fees pursuant to ORS 20.096.[5]

The trial was before the court sitting without a jury.[6] The trial court disagreed with defendants' posi-

---

[3] A tax year runs from July 1 of one year to June 30 of the next year. Such taxes are payable on November 15 of the first year.

[4] As will be discussed later in the opinion, a sum was paid in August 1970 by defendants to plaintiff for the first 5-year term equal to the amount computed according to plaintiff's contention.

[5] ORS 20.096 provides in part as follows:

> "(1) In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and necessary disbursements.
>
> "* * * * *
>
> "(3) As used in this section * * * 'prevailing party' means the party in whose favor final judgment or decree is rendered.
>
> "(4) As used in this section * * * 'contract' includes any instrument or document evidencing a debt."

[6] The significance of this will be discussed later in this opinion in connection with the extent of scope of review by this court.

tion that the lease was not ambiguous and over defendants' objection admitted extrinsic evidence on the intent of the parties. After the hearing, the trial judge entered an "OPINION & ORDER," in which he found for the defendants and ordered:

"that the defendants remit to the plaintiff the sum of $3,179.55, consisting of five payments of $635.91. Neither party is entitled to attorney's fees."

There was no provision in the opinion and order for costs and disbursements. Neither party filed a cost bill.[7]

Plaintiff appeals from the opinion and order "and the whole thereof." Defendants cross-appeal from that portion of the opinion and order "that denied to the defendants attorney fees."

■ Plaintiff first assigns as error the receiving in evidence of a copy of a letter to plaintiff's president "from his[8] attorney." On cross-examination, the following occurred:

"Q   During the spring of 1970, did you feel that you were clear in your own mind as to exactly what the lease provided insofar as real property taxes were concerned?

"A   Very clear, yes.

"Q   Were you also clear in your own mind insofar as the renewal period was concerned, whether or not the lease was for 15, 10 or 20 years?

"A   Very clear, yes.

"Q   Did you have an occasion, during that period of time, to consult with your lawyer as to what that lease really provided?

"A   At one time, Mr. Seitz, who had drawn the lease or the original, at least, reviewed the lease.

"Q   When was this?

"A   Is that what you're referring to?

"Q   Yes. When was this?

---

[7] *See* ORS 20.030, granting discretion to award costs and disbursements in a suit in equity. *Compare,* ORS 20.040 and 20.060, requiring the allowance of costs in actions at law.

[8] The only witness called by plaintiff was the corporation's president. The record shows this was a closely held corporation, which acted throughout the entire period of time solely through this witness.

"A   The date of that, I'm not sure. That is, I have it in my briefcase and—

"THE COURT: Why don't we take a recess. You can take a look at it. We'll take ten minutes.

"(Thereupon, the Court took a ten minute recess, after which time it reconvened.)

"AVERY H. STEINMETZ, the witness on the stand at the time the recess was taken, resumed the stand and testified further as follows:

"CROSS EXAMINATION (Continued)

"BY MR. BRISBEE:

"Q   Mr. Steinmetz, did you find the letter?
"A   Yes.
"Q   Do you have it with you there at the stand?
"A   No, but it's dated March 10, 1970.

"CLERK: Defendant's Exhibit 16 for identification.
"(Thereupon, a Letter was marked Defendant's Exhibit No. 16 for identification.)

"Q   (By Mr. Brisbee) Show you what has been marked as Defendant's Exhibit 16 and ask if you recognize that?

"THE COURT: Well, that's a letter, isn't it?

"Q   (By Mr. Brisbee) Is that a copy of the letter you're referring to?
"A   Yes, it is.

"MR. BRISBEE: We would move for the admission of it.

"THE COURT: Be received.
"(Thereupon, Defendant's Exhibit No. 16 for identification was received in evidence as Defendant's Exhibit No. 16.)

"MR. JOHANSEN: Your Honor, may I inquire with respect to that exhibit?

"THE COURT: Yes.

"BY MR. JOHANSEN:

"Q   Mr. Steinmetz, do you recall whether you ever gave a copy of that letter to Mr. Teufel?
"A   I might have. I don't recall since they have a copy of it.

"Q   You don't have any personal recollection of how they happen to come into possession of a copy of it?

[ 654 ]

"A   No, I haven't.

"MR. JOHANSEN: Your Honor, for the record, I think I should object. That exhibit appears to involve privileged communication between attorney and client.

"THE COURT: It's waived as soon as he takes the stand and testifies to the subject matter under the Oregon statute. You ever read the waiver clause?"[9]

The exhibit was a copy of a letter dated March 10, 1970, from Mr. Seitz to the witness concerning a review by the lawyer of the lease.

ORS 44.040 provides as follows:

"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:
"* * * * *

"(b) An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of professional employment.
"* * * * *

"(2) If a party to the action, suit or proceeding offers himself as a witness, it is deemed a consent to the examination also of a * * * attorney * * * on the same subject."

At first blush, the statute would not appear to be applicable, because the attorney (Seitz) was not being examined. However, in *Bryant v. Dukehart,* 106 Or 359, 210 P 454 (1922), a predecessor of the statute[10] was construed to mean that the client cannot be compelled to disclose a privileged communication

---

[9]It is noted that the court actually received the exhibit without objection by plaintiff. However, plaintiff immediately sought and obtained permission to inquire as to the exhibit and thereafter "objected." He probably, in the state of the record, should have more properly made an appropriate motion rather than an objection. It is apparent to us that the court ruled upon its view of the admissibility of the exhibit and not upon the procedural question which invoked the ruling. We treat the assignment as if objection had been made prior to receiving the exhibit in evidence.

[10]A predecessor of ORS 44.040 was O.L. § 733, which was identical to the portions of ORS 44.040(1) and (b) quoted. O.L. § 734 in substance was the same as ORS 44.040(2).

[ 655 ]

which the attorney is precluded from disclosing. In *Bryant* a letter written by the plaintiff to his lawyer was received in evidence over objection during cross-examination of the plaintiff. We noted:

"All confidential communications, whether oral or written, made to an attorney in the course of professional employment, are privileged, even though no suit or action had been begun or was in contemplation at the time. Whenever the relation of attorney and client exists, all communications made in confidence by one to the other, which by any possibility may become the subject of judicial inquiry, are privileged and inadmissible as evidence unless such privilege is waived by the client. Without the consent of the client, the attorney will not be permitted to disclose what such communications are nor can the client himself be compelled to disclose the same. In *State v. White,* 19 Kan. 445 (27 Am. Rep. 137), the court said: 'It would be absurd to protect by legislative enactment professional communications, and to leave them unprotected at the examination of the client. In such an event, in all civil actions, the confidential statements of client and counsel would be exposed, and likewise the same.would occur in all criminal actions where the defendant should testify. The authorities are otherwise. The true view seems to be that communications, which the lawyer is precluded from disclosing, the client cannot be compelled to disclose. This privilege is essential to public justice, for did it not exist no man would dare to consult a professional adviser with a view to his defense, or to the enforcement of his rights.' This rule applies to written communications in the possession of third parties as fully as it does to those in the possession of the attorney, and this is so regardless of how such communications may have come into the possession of the party seeking to use them as evidence. The right conferred upon the client is for his protection and advantage and it is one which he alone is authorized to waive. Therefore the letter in question did not lose its privileged character and become competent evidence against the plaintiff simply because it had passed from the possession of his counsel, to whom it was written, and into the hands of a third party, regardless of how such change of possession may have occurred: See 4 Jones' Blue Book of Evi., § 751." (106 Or at 362-64)

■■  Under the circumstances of this case, we find the privilege to be inapplicable. Where communications between attorney and client are not regarded by the client as confidential, the policy reasons for shielding inquiry into their contents disappear. *See Baum v. Denn,* 187 Or 401, 406-07, 211 P2d 478 (1949). McCormick, *Evidence,* 172, § 84 (1954). Where a client concedes, as here, that he might have given to another a letter from his attorney, such a concession dispels the notion that the communication was regarded as secret.

■  We can reasonably infer that plaintiff waived any privilege by releasing to defendants the contents of the letter prior to trial. The defendants' attorney was aware of the contents of the letter before it was produced by the witness. The witness admitted that he might have given a copy of the letter to defendants. *Bryant* recognizes that only the client can waive the privilege and that, therefore, mere evidence that the attorney has given a privileged letter to another will not destroy the privilege. In this case, there is a fair inference, based upon the testimony of plaintiff's representative, that the letter was transmitted to defendants by the plaintiff or with its knowledge. There is, moreover, a disputable presumption that defendants came into possession of a copy of the exhibit in a lawful manner.[11]

Even if the exhibit was improperly received, such error would not necessitate reversal. The text of the exhibit tends to contradict the witness in his assertion that during the "spring of 1970" he was clear in his own mind as to the provisions of the lease. But the lawyer's language in the exhibit concerning "addition-

---

[11] *See* ORS 41.360(1), which establishes the disputable presumption that a person is innocent of crime or wrong. There is an additional indication that the letter was given to defendants by Mr. Steinmetz. The exhibit which defendants introduced was a copy of the original letter, bearing the letterhead of the attorney and the attorney's signature. The original letter would have been in plaintiff's possession as opposed to the attorney's file copy (without signature or letterhead).

al rental" is really no more informative than the language of the instrument itself. As such, it had little or no weight on the central issue of the intent of the parties at the time of the execution of the lease in 1965. For this reason, its admission even if error was not prejudicial.[12]

■ As a part of his "OPINION & ORDER" under a heading entitled "FACTS," which preceded a section entitled "FINDINGS," the court stated "The lease was prepared by the plaintiff's attorney." Due to the arrangement of these portions of the Opinion and Order, it would appear that the last-quoted language was an undisputed fact.

Plaintiff assigns error in this respect as follows:

"The trial court erred in finding, as a fact in its Opinion and Order, that 'The lease was prepared by the plaintiff's attorney.' "

As noted above, this was labeled as a "fact" by the trial court; however, if it be treated as a finding of fact, the result we reach will not be different.

---

■*See Bryant v. Dukehart,* 106 Or 359, 210 P 454 (1922). Because of the inference of waiver and the lack of prejudice here, it is unnecessary to decide whether plaintiff waived objection to inquiry into communications with its attorney by the testimony of its representative on direct examination as to the meaning of the disputed provision. As noted above, ORS 44.040(2) provides that an attorney may be examined "on the same subject" where a client "offers himself as a witness" in a proceeding where he or she is a party. There is some inconsistency in the Oregon cases as to whether testimony in general on the same subject will waive the privilege or whether it is necessary to testify on direct examination on a particular privileged communication. *Compare, Bryant v. Dukehart,* 106 Or 359, 366, 210 P 454 (1922), *with McNamee v. First Nat. Bank of Roseburg,* 88 Or 636, 640-41, 172 P 801 (1918); *Gerlinger v. Frank,* 74 Or 517, 521, 145 P 1069 (1915). *Cf., State v. Forsyth,* 20 Or App 624, 533 P2d 176 (1975) (waiver of priest-penitent privilege by subject-matter testimony). *See generally,* the cases collected in Annotation, "Party's waiver of privilege as to communication with counsel by taking stand and testifying," 51 ALR2d 521 (1957).

A further difficulty lies in the interpretation of the words "on the same subject." The extent to which these words would be broadly or narrowly construed. would in part depend upon the attitude of the court toward evidentiary privileges. If the policy which views trials primarily as a vehicle for ascertaining the true facts is paramount, the "same subject" could be a very general category. On the other hand, if full disclosure between lawyer and client is to be promoted, a more restrictive definition may be called for.

Since the trial judge found it necessary to resort to extrinsic evidence to construe the provision, the rule that ambiguous language will be most strongly construed against the party who prepared it would not have been of major importance in the final result reached below. The statement by the trial judge was unnecessary, and even if we assume that it was erroneous, we regard that assertion as harmless in light of our holding with respect to plaintiff's third assignment of error.

■ In its third assignment of error, plaintiff submits that:

> "The trial Court erred in holding, in its Opinion and Order, that:

> "Five years from the date of the original lease, the rent was intended to increase in an amount which represented the *difference* between the 1965-1966 taxes and the 1969-1970 taxes. That rent was to remain in effect for five years, then increase in an amount equal to the *difference* between the 1969-1970 taxes and the taxes five years hence.

> "Therefore, the Court finds in accordance with the interpretation set forth by the defendants."

Since this cause was tried on the law side without a jury, the court's findings have the effect of a general jury verdict, and our scope of review is the same as if the case had been tried by a jury. Our sole function is to determine whether there is evidence from which the trial court could have made this finding.

The evidence was conflicting.

At or shortly after the end of the first five-year period, plaintiff sent to defendants a tabulation (dated November 1969 and after receipt of the 1969-1970 tax statement) showing the increase in taxes each year since 1965-66. The total of such increases was $1,359.63, which defendants paid, without question or protest, in August 1970, shortly after the end of the first five-year period.

■ This constituted a practical construction of the

lease by the parties and is entitled to great weight. It can also be viewed as an admission against interest on the part of defendants, or at least as conduct wholly inconsistent with their present contention.[13]

■ However, there is no evidence that the defendant Mrs. Teufel took part in the negotiations leading to the execution of the lease. She had no occasion to speak to plaintiff's president about the prepaid taxes, which were paid by plaintiff as they became due during the first five-year period. There was evidence from which it could be found that the first time defendants were informed by plaintiff about the relatively large increase in taxes was the fall of 1970. Mrs. Teufel testified that at the time she made the payment in August 1970 she had not read the lease. This, of course, does not excuse her from being bound by the terms thereof, but it is relevant and has some weight in explaining why she made the payment requested of her by plaintiff at that time. Additionally, Mrs. Teufel had not participated in her husband's nursery business prior to his death and from August 1966 to August 1970 was involved not only with raising and managing a family of five children but with learning to operate and manage a business. Again, this bears only upon the believability of her explanation as to why she made the August 1970 payment of additional rent without protest.

There is further evidence that during the spring of 1970 plaintiff's president had talked at length with appraisers in the tax assessor's office and was aware at that time that taxes for the year 1970-71 would increase rather dramatically. When plaintiff asked

---

[13]Plaintiff also advances a hypothetical argument concerning the reasonableness of its construction of the provision with respect to the return on his investment a prudent man would expect by way of rental of the premises in question. On the other hand, defendants hypothesize a set of facts which indicate that their construction of the provision does not produce an unreasonably inadequate return on plaintiff's investment. Since each hypothesis rests to a considerable extent on facts not established by evidence in the record, we find these arguments of very little help.

defendants to make the payment for additional taxes in August 1970, the taxes had then been due and ostensibly paid some nine months earlier, in November of 1969. In November of 1970, after defendants had made the requested payment for additional taxes, plaintiff purportedly sent two separate, but virtually identical, letters to defendants, one dated November 1, 1970, and the other November 23, 1970. Plaintiff's president could offer no reasonable explanation as to why two such letters would have been sent. Defendants admit the receipt of that dated November 23. Among other things, in that letter plaintiff suggested that the additional taxes over and above the 1965-66 level be paid annually rather than in a lump sum at the end of the second five-year period. Mrs. Teufel consulted her attorney and forwarded to plaintiff's president a copy of her attorney's opinion that the lease provision was to be construed as defendants here contend.

Defendants argued before the trial judge and in this court that this course of conduct by plaintiff's president, commencing with his realization in early 1970 that there would be a sharp increase in taxes, was a manipulation of Mrs. Teufel which resulted in persuading her to pay a comparatively small amount ($1,359.63) in August 1970 and thereby establish a "practical construction" by the parties of the meaning of the provision.

■ From the trial judge's general finding in favor of defendants, it is manifest that he was persuaded of the validity of the defendants' position with respect to the facts. Since there was evidence to support his finding and since we are required to review the evidence in the light most favorable to the prevailing party below, we must affirm.

An alternative ground presented upon the record is available to reach the same result. Defendants from the outset took the position that the provision was unambiguous and should be construed by the court as

a matter of law without resort to parol evidence. Directing our attention to the document itself and without resort to extrinsic evidence, the provision in question states that at the end of each five-year period the excess of taxes over and above the 1965-66 year must be paid as additional rent. Standing alone, that language, we agree, is susceptible of the construction urged by either party. The provision in question goes on, however, to require the lessee to pay all excess taxes which may be incurred by reason of the lessee's construction of any additional buildings on the real property. If it were the intention of the parties that *all* excess taxes were to be paid by the lessee, then this particular provision would have absolutely no meaning. It has meaning only if the first provision concerning taxes be construed in accordance with defendants' contentions.

## CROSS-APPEAL

Upon cross-appeal defendants assert that the trial court erred in failing to award attorney fees to them as the "prevailing party" below. The lease specifically provided for attorney fees to the lessor should suit or action be instituted to enforce the lease in any way. Taken together with ORS 20.096,[14] the "prevailing party" is entitled to an award of attorney fees. Although the lease agreement was executed prior to the enactment of ORS 20.096, the statute applies to this litigation. *See Dean Vincent, Inc. v. Chamberlain,* 264 Or 187, 504 P2d 722 (1972).

This cause was tried on the law side, and in light of the lease provision for attorney fees, ORS 20.096 and 20.060, defendants are entitled to an award of attorney fees and costs.

The circumstance that the parties stipulated below that the trial court could set attorney fees without the taking of evidence "depending on how the court might decide" did not give the trial court the discretion not to

---

[14]See footnote 5.

award such fees. *See Sherwood & Roberts v. Alexander,* 269 Or 389, 397, 525 P2d 135 (1974).

It follows that the matter must be remanded to the trial court for the award of reasonable attorney fees and costs to defendants.

Affirmed as modified and remanded for further proceedings in accordance with this opinion.