Submitted on record and briefs May 15, affirmed June 13, 1978

STATE OF OREGON, *Respondent,*
*v.*
DONALD MULLER, *Appellant.*
(No. C77-04-04880, CA 8636)
579 P2d 883

Oscar D. Howlett, Portland, filed the brief for appellant.

William F. Nessly, Jr., Assistant Attorney General, Salem, filed the brief for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

## TANZER, J.

Defendant appeals his conviction for driving while under the influence of intoxicants. Several policemen testified for the state as to the defendant's intoxicated condition. There was also a videotape showing his demeanor at the time of arrest. The defendant admitted having had seven beers in two taverns during the afternoon preceding the arrest and that he had refused the breathalyzer test. Defendant also stated that there was a man, apparently in custody, in the rear seat of the police car when he was arrested. There was also, he said, a blond woman in the front seat who might have been a policewoman, though he had never seen one before.

Defendant assigns as error the overruling of his objection to a cross-examination question as to his telling his lawyer about the potential witness, *i.e.,* the man in the back seat. The state asserts that the failure to object to the immediately preceding questions constituted a waiver, but, if not, there was no prejudicial error because the answers were not significant in light of the strong evidence of guilt. The entire pertinent testimony, with the portion assigned as error underlined, is:

"Q [by prosecutor/Mr. Kokes] And Oscar Howlett, your attorney, is the same person that you went to see in person that night?

"A Yeah, before I picked up my car.

"Q And is it not true that you probably told Mr. Howlett in detail everything that transpired?

"A More or less, yes.

"Q Isn't it true that you told Mr. Howlett that night about the blond woman in the front seat of the car and the other passenger?

"And I don't recall if I told Oscar about the blond woman—

"Q Well—

"A —in the car and the man in the back seat. I don't really recall. I just told him about the facts about—of how I was stopped.

[ 761 ]

"Q Well, okay, let me ask you this. How did Mr. Howlett eventually find out about the fact that you believe there was another man in the back seat of the car and a blond woman in the front seat?

"MR. HOWLETT: Objection, your Honor. He's assuming that is a fact and I haven't testified yet.

"THE COURT: I know it, I know it. Well—

"MR. HOWLETT: Of course, I could testify.

"THE COURT: Do you want to answer the question? What is the question, please?

"MR. KOKES: Let me rephrase it.

"Q *Did you ever tell Mr. Howlett about the man being in the back seat?*

"MR. HOWLETT: *Now, your Honor, that's privileged communication.*

"THE COURT: *Well, I'm worried about that, whether it's really privileged or not, but I—*

"THE WITNESS: *What? What? What's—*

"THE COURT: *I'm going to overrule the objection and let him answer the question here. You brought it [i.e., the* presence of the man] *out here, he brought it out himself. Let him tell the jury.*

"A. *I know I told Oscar yesterday.*

"THE COURT: All right, all right.

"Q (by Mr. Kokes) Yesterday. Why didn't you tell him sooner about the fact that there was somebody with you that night?

"MR. HOWLETT: Objection. That assumes a fact not in evidence.

"THE COURT: I know it. It's argumentative. Sustained."

The content of communications from a client to an attorney are confidential and generally protected from compulsion by ORS 44.040(1)(b), which codifies the attorney-client privilege:

"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:

"* * * * *

"(b) An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon, in the course of professional employment."

Although the statute's terms appear to pertain only to the testimony of the attorney, ORS 44.040(1)(b) has been construed to protect the client as well from being compelled to disclose a privileged attorney-client communication. *Stark Street Properties v. Teufel,* 277 Or 649, 655-56, 562 P2d 531 (1977). The privilege may be waived by failure to object. Here the preceding questions were mixed as they pertained to the male and female passengers. Thus whether there was a waiver depends upon a fine distinction we need not draw in light of our disposition on the next point, prejudice.

Assuming for argument that there was no waiver of the privilege by failure to object, then the overruling of the objection was clearly error. The next question is whether there was prejudice. In view of the wealth of evidence against the defendant, including his own admission of having spent the afternoon in taverns drinking beer, and the negligible significance of the answer which followed the objection, we can be reasonably certain that the admission of the answer did not affect the result and that the verdict would have been the same had the objection been sustained. Therefore, the error was harmless. *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973).

Affirmed.